**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Fifth Floor
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for 231 Bainbridge LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MARLENE MARSHALLECK<br>AKA MARLENE A. MARSHALLECK<br>AKA MARLENE E. MARSHALLECK,<br><br>*Debtor*. | Case No. 17-42418 (NHL) |

**(1) REPLY IN SUPPORT OF 31 BAINBRIDGE LLC'S MOTION TO ALLOW ITS CLAIM [DOCKET NO. 57] AND (2) RESPONSE OF 231 BAINBRIDGE LLC IN OPPOSIITON TO DEBTOR'S MOTION OBJECTING TO THE PROOF OF CLAIM FILED BY BAINBRIDGE LLC [DOCKET NO. 64]**

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

231 Bainbridge LLC ("Bainbridge"), by and through its counsel, hereby files this *(1)* reply in support of Bainbridge's motion to allow (the "Motion to Allow") its claim, designated Claim No. 1 (the "Claim"), against the above-captioned debtor (the "Debtor") [Docket No. 57] and *(2)* response in opposition (the "Response") to the Debtor's motion objecting to the Claim (the "Claim Objection") [Docket No. 64].[1]

In furtherance hereof, Bainbridge respectfully states as follows:

---

[1] The Debtor set the objection deadline for the Claim Objection for a Sunday, February 11, 2018. Under Rule 9006 the next business day February 12, 2018, is the proper due date for this Response. Unlike Debtor's counsel, Bainbridge believes it is required to adhere to deadlines even when more time would be preferable.

## PRELIMINARY STATEMENT

1. This case commenced April 19, 2017. As of the date hereof, the Debtor has done virtually nothing to move the case along: notably Bainbridge's claim is still not resolved, exclusivity has expired, there has been no plan filed, no disclosure statement filed and no sale motion or bidding procedures filed despite multiple commitments by Debtor's counsel to do so. At this pace we will be no further along when this case hits its one year anniversary in April.

2. Despite the Debtor's months of protestations and slandering of Bainbridge and its Claim, it was Bainbridge that had to bring the matter before the Court with the filing of its December 6th Motion to Allow lest we would all still be waiting for Debtor's counsel to act. Until that Motion was filed, the Debtor spent months making vague oral allegations of problems with the Claim but did nothing else. Instead of filing a plan, disclosure statement or bidding procedures, as Mr. Dahiha twice promised to this Court, the Debtor filed only an unapprovable *nunc pro tunc* motion to extend exclusivity, which motion was properly denied, and an improper motion to preserve testimony without so much as a claim objection on file. At the November 30, 2017 hearing, Debtor's counsel, Mr. Dahiya, claimed on the record he had chosen a stalking horse bidder and was prepared to file a plan/disclosure statement with bidding procedures. He even discussed the details of bid protections. He said that would be filed within 15 days, or by mid-December. We are now in mid-February and there are still no bidding procedures motion, no plan, no disclosure statement and no contract of sale and no consequences for sam. Based on Mr. Dahiya's specific promises, the Court adjourned the Bainbridge's motion to convert [Docket No. 49]. When the parties returned to Court on January 18, 2018, still without a plan or bid procedures, the same exact promises were repeated. Yet,

as of today, February 12, 2018, all of the same remains true: there is no bidding procedures motion, no plan, no disclosure statement and no contract of sale. It is clear that until Debtor's counsel is ordered to do something *with consequences attached*, he will not do it.

3. Debtor's counsel is using delay as leverage in this case and this Court should not permit it. Debtor's counsel clearly intends to raise Claim-related issues piecemeal in order to drag this matter out as long as possible. The Claim Objection challenges Bainbridge's standing, a matter that this Court can decide on the undisputed facts and controlling law. Bainbridge submits that Mr. Dahiya it will not stop there. Tomorrow there will be another issue, and next hearing another and in June and next January another. It will never end until this entire matter has to be decided on appeal and much court time and estate money has been wasted. This Court should not permit such litigation tactics to bog down this case. Bainbridge urges this Court to set firm deadlines for all parties and decide those matters that may be decided on undisputed facts and known law. The matter of standing can be decided on February 21st and Bainbridge requests that the Court put that matter to rest that day.

4. The Debtor and Mr. Dahiya are obstructionists to Claim allowance or disallowance. Bainbridge set an objection deadline of January 8, 2018 on its Motion to Allow. Rather than timely object with what was set forth in the Claim Objection, the Debtor instead filed "opposition" a week late, on January 15, 2018, just three days before the January 18, 2018 hearing. As planned, his opposition left no time for Bainbridge to reply. Mr. Dahiya should be as bound by Local Rule 9006-1(a)(ii) (answering papers to be received 7 days before hearing) as anyone. There were no consequences to his failure to timely object but there should be to maintain a balanced playing field before this Court

between the Debtor and her creditors. By overlooking the failure to timely object, the Court permitted Mr. Dahiya to usurp Bainbridge's own Motion to Allow and put it on Mr. Dahiya's time table. It is simply not fair to proceed like this.

5. For the record, Mr. Dahiya's January 15th "opposition" [Docket No. 63] was not even a substantive objection because in it he claimed—with complete impunity—the Motion to Allow was unnecessary and a "procedural herring" because "[t]the claim secured or unsecured was never an issue." Affirmation in Opp., p. 1, 2 [Dock. No. 63]. He even challenged Bainbridge's procedural right to even file the Motion in the first place. He completely disregarded black letter law and the bankruptcy rule that permits the Motion to Allow. *See* 11 U.S.C §506(a) and Bankruptcy Rule 3012. He further stated that the Motion was unnecessary because the Claim was "deemed allowed," *id.,* and that there was no issue with the Claim because it was "not listed as disputed" in the Schedules. *Id*. at 2. With his usual irony, he questioned, "Why is Bainbridge so agitated? (We do not know.)" *Id.* at 2. Mr. Dahiya's next acts reflect just how hollow and disingenuous his Court-filed pleadings can be and how they unfairly waste time. Two days later on January 17th—the very day before the hearing on the Motion to Allow—Mr. Dahiya filed his Claim Objection openly acknowledging (i) that the Claim *was disputed*, (ii) why a Motion to Allow *was necessary*, (iii) why Bainbridge *was agitated* and (iv) why the Claim *was an issue*. He further confirmed the necessity for Bainbridge's Motion when, just hours before the January 18th hearing, he amended the Schedules to reflect the Claim as 'disputed.' Accordingly, instead of going forward with the substantive hearing on the Motion to Allow on January 18th (when it was originally scheduled), Mr. Dahiya usurped these proceedings to conform to his own time schedule by making his Claim Objection returnable on February 21st. Everything that was said in

the Claim Objection could have been said in a timely objection to the Motion to Allow and we would all be a month ahead right now but Mr. Dahiya was not going to have it.

**REPLY IN SUPPORT OF MOTION TO ALLOW
AND RESPONSE TO CLAIM OBJECTION**

6. Two motions are pending before the Court that relate to the same subject matter: allowance of the Claim. As set forth below, the Motion to Allow should be granted and the motion for Claim Objection denied.

7. The Claim Objection sets forth a 13-page, inflammatory assembly of random points of law that have little or nothing to do with the undisputed facts or controlling law in this case. Much of it is incomprehensible but it clear that it does not adhere to undisputed facts and the controlling law. It starts with the preposterous, suspicion-riddled query of why 231 Bainbridge LLC chose the name it did. Contrary to Mr. Dahiya's statement that "seldom is it seen that the POC filers would assume or adopt names on an *ad hoc* basis of the subject *in rem* borrower", the most common way of naming an entity is to choose the property address, here "231 Bainbridge." He knows that and the Court undoubtedly observed this so it is pointless to fill pleadings with these imaginary issues.

8. The basic facts are not in dispute. The Claim Objection challenges Bainbridge's standing to assert the Claim. It is undisputed that Bainbridge is the holder of the original note (the "Note"), endorsed in blank that supports its fully secured claim in the amount of $1,176,517.94 against the Debtor with a recorded, first priority lien on the Debtor's multifamily building located at 231 Bainbridge Street, Brooklyn, NY 11233 [Block 1682, Lot 73] (the "Property"). The original Note was physically brought to Court and Mr. Dahiya and the Debtor have now had the opportunity to inspect it. At true

and correct copy of that Note is attached hereto as Exhibit A. As the holder of the Note endorsed in blank, Bainbridge is the proper party to assert the Claim. Chief Judge Craig acknowledged the black letter law on this subject when she presided over this matter at the September 14th hearing. This Court did the same at the October 26th hearing. Accordingly, the Court should summarily overrule any claims of lack of standing now that Bainbridge has brought the original note endorsed in blank into Court for inspection. It is patently unfair under the Federal Bankruptcy Rules to permit the Debtor to delay proceedings that could be decided today on the law. There are simply no material factual matters in dispute that prohibit a final ruling on standing.

9. The Motion to Allow seeks allowance of the Claim in the prepetition amount of $1,176,517.94. The Debtor's opposition [Docket No. 63] opposed the Motion solely on the basis that it was purportedly unnecessary and procedurally improper. The Motion was plainly necessary, permitted, proper, and common in this Court, pursuant to 11 U.S.C §506(a) and Bankruptcy Rule 3012, as discussed in the Motion. Because no substantive, timely objection was filed, the Court should grant the Motion to Allow.

10. To the extent that the Court entertains the Claim Objection as a late-filed objection to the Motion to Allow, it should reject the arguments therein as legally irrelevant under the undisputed facts of this case. The only fact relevant for this Court to decide Bainbridge's standing to assert this Claim is if Bainbridge does in fact hold the original Note signed by the Debtor and endorsed in blank and it is undisputed that it does and it was brought to Court to prove it. The Claim Objection, from page 3 to page 15, goes through every conceivable argument of why notes in general can be challenged but fails to acknowledge as controlling the very law Mr. Dahiya himself cited on the bottom or page 5. He states that possession permits enforcement and that a note may be

endorsed in blank rendering it notebearer paper. Claim Obj. p. 5 (citing UCC 3-205). UCC-3-205(b) provides as follows: "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Here Bainbridge holds the original Note and it is endorsed in blank. Accordingly, this Court's inquiry need go no further. Numerous courts in New York State have so held. Many of the internal cites in the following are omitted but there are countless cases on this issue. *See JPMorgan Chase Bank, Nat. Ass'n v. Weinberger*, 142 A.D.3d 643, 645, 37 N.Y.S.3d 286 (2nd Dep't 2016) ("Here, the bank established, prima facie, that it had standing to prosecute this action by demonstrating that it was in physical possession of the note); s*ee also Emigrant Bank v. Larizza*, 13 N.Y.S.3d 129, 131, 129 A.D.3d 904, 905 (App.Div. 2nd Dept. 2015) ("Either a written assignment of the underlying note *or the physical delivery of the note to the plaintiff, . . . is sufficient to transfer the obligation*.") (emphasis added) (citing *Wells Fargo Bank, N.A. v. Parker,* 125 A.D.3d 848, 5 N.Y.S.3d 130; *U.S. Bank N.A. v. Guy,* 125 A.D.3d 845, 5 N.Y.S.3d 116; *Emigrant Sav. Bank–Brooklyn/Queens v. Doliscar,* 124 A.D.3d 831, 2 N.Y.S.3d 539; *U.S. Bank, N.A. v. Collymore,* 68 A.D.3d 752, 754, 890 N.Y.S.2d 578). Here is undisputed that Bainbridge has physical possession of the Note and such Note is endorsed in blank.

11.     The Debtor attempts to make an issue concerning the assignment history. There is no requirement under the law that Bainbridge establish how it came into the possession of the Note, particularly where it is endorsed in blank. *See JPMorgan Chase Bank, N.A. v Weinberger*, 142 A.D.3d 643, 644, 2016 N.Y. Slip Op. 05850, 2 (App. Div. 2nd Dept.  2016) ("There is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into

possession of the instrument in order to be able to enforce it.") (citing UCC 3-204 [2]). The Weinberger court goes on to say "Moreover, it is unnecessary to give factual details of the delivery in order to establish that possession was obtained prior to a particular date." *Id.* (citing *Aurora Loan Servs., LLC v Taylor*, 25 NY3d 355, 361-362 (N.Y. Ct. App. 2015).)

12. The Debtor makes countless other inflammatory statements that can be addressed summarily.

- The name of the entity and the specific identity of the person authorized to sign the proof of claim is irrelevant. Claim Obj., p. 3. There is not a shred of evidence or basis for Mr. Dahiya to believe Mr. Twerski was not authorized. What is relevant is whether Bainbridge holds the original Note endorsed in blank and it does.

- The history of the ownership of the Note is legally irrelevant as discussed in paragraphs 9 and 10 above. Claim Obj., p. 4.

- There cannot be competing claims to the Note when only Bainbridge holds the original. Claim Obj., p. 4. This Court has already said repeatedly that she could fashion an order that would prohibit the possibility of double payment. In any event, the Debtor is creating this issue to avoid paying what she owes not because there is any real competing claimant on the amounts due under the Note.

- The Debtor's many ways of restating its arguments about assignments and note history (Claim Obj., pp. 4-8) are belied by the black letter law cited in paragraph 9 and 10 above.

- The Debtor's google research into former employees at 1st Republic is not legally relevant to whether Bainbridge is the noteholder today. Claim Obj., pp. 8-9.) There is probably no bank in the world at this point that does not have at least one employee that was accused of fraud. It does not constitute a defense to payment but the Debtor knows the story is salacious and therefore, in Mr. Dahiya's estimation, properly includable in the Objection. Even the statements were true about the fraud, the Debtor offers no proof whatsoever that any of the employee's fraudulent activity had any impact on this case. And, even if they did somehow negatively impact 1st Republic's rights, it is 1st Republic's claim to make, not the Debtor's and certainly not a defense to payment. Mr. Dahiya would have the Court believe that we need to uncover all aspects of the history of this Note, no matter the cost, no matter the time involved, before Ms. Marshalleck should be required to address her failure to pay. As discussed in paragraphs 9 and 10 above, standing is established without the need for such efforts.
- The Debtor brings up the securitization of loans. Claim Obj., pp. 9-10. This again is meant to scare the Court and Bainbridge into thinking that some securitization-related voodoo or sophisticated fraud is at hand sufficient to challenge standing and stop the whole case from proceeding. Again, what matters for standing is what is set forth in paragraphs 9 and 10 above.
- The Debtor discusses what is purportedly the law of power of attorney, allonges, and a further discussion of securitization in New York State.

Claim Obj., pp. 10-13. This section is particularly incomprehensible but what is clear is that, for standing, the law set forth in paragraphs 9 and 10 controls. The fact of the matter is that, while the chain of assignments was included as part of the Claim because it was part of what Bainbridge acquired, the only relevant document in the proof of claim is the Note endorsed in blank of which Bainbridge holds the original.

- The Debtor claims that it is Bainbridge's duty to show every payment to prevail in its proof of claim. This is wrong for two reasons. First, there have been no payments since 2009 so there is nothing to show. Second, even if there were, payment is an affirmative defense that must be proved. *See* N.Y. C.P.L.R. 3211 (a)(5) a motion to dismiss may be made on the basis that "the cause of action may not be maintained because of . . . payment . . ."; *see also* N.Y. C.P.L.R. § 3018 (b) Affirmative defenses. A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading such as . . . payment[.]"; *Ross v. Ross Metals Corp.*, 976 N.Y.S.2d 485, 487, 111 A.D.3d 695, 696 (App.Div. 2nd Dept. 2013) (affirmative defense of payment is waived if not timely raised).

**RESERVATION OF RIGHTS**

13. Bainbridge expressly reserves all of its rights, claims and defenses against the Debtor under the Note and mortgage and submits that such Note and mortgage remain in full force and effect during the bankruptcy case until this Court decides otherwise. Notwithstanding anything herein, Bainbridge further reserves the right to seek any other relief in this case it deems necessary and to assert further objections to this and any

subsequent plans or relief sought by the Debtor. Bainbridge expressly reserves its righty to seek and intends to seek all of its postpetition interest and legal fees as allowed by the Court and permitted by the Note and mortgage. Finally, Bainbridge reserves its right to respond in writing to any clarifications of or additions to any of the Debtor's claims against Bainbridge.

14. For all of the foregoing reasons, the Court should deny the Claim Objection and grant the Motion to Allow in the prepetition amount of $1,176,517.94.

Dated: February 12, 2018  
      New York, New York

RAVERT PLLC

By: /s/ Gary O. Ravert  
    Gary O. Ravert  
    116 West 23rd Street, Fifth Floor  
    New York, New York 10011  
    Tel: (646) 966-4770  
    Fax: (917) 677-5419

*Attorneys for 231 Bainbridge LLC*