**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Fifth Floor
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for 231 Bainbridge LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MARLENE MARSHALLECK<br>AKA MARLENE A. MARSHALLECK<br>AKA MARLENE E. MARSHALLECK,<br><br>*Debtor*. | Chapter 11<br><br>Case No. 17-42418 (NHL) |

**231 BAINBRIDGE LLC'S SUPPLEMENTAL STATEMENT IN RESPONSE**
**TO CLAIM OBJECTION [DOCKET NO. 64] AND IN SUPPORT**
**OF MOTION TO ALLOW ITS CLAIM [DOCKET NO. 57]**

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

   231 Bainbridge LLC ("Bainbridge"), by and through its counsel, hereby files this supplemental statement in further response to the claim objection [Docket No. 64] filed by the above-captioned debtor (the "Debtor") and in further support of Bainbridge's motion to allow its claim [Docket No. 57].

   In furtherance hereof, Bainbridge respectfully states as follows:

**SUPPLEMENTAL STATEMENT**

   1. Two issues are worthy of additional focus in preparation for the hearing before this Court on February 21st. Apart from the Claim Objection and Motion to Allow is

Bainbridge's adjourned motion for conversion to chapter 7. It also warrants a short additional discussion.

## Claim Resolution History, Motion to Allow and Claim Objection

*Standing*

2. As set forth below, little more proof is needed to demonstrate to the Court that the Debtor is intentionally delaying this proceeding and why the conversion motion was warranted. All the Court needs to do is look at the history between the parties on the issue of standing to enforce the note in this case. As the Court will see, the Debtor has sought and continues to seek to drag this process out and make piecemeal arguments and asset myriad other claims in an effort to create a litigation storm that is meant to bring Bainbridge to its knees. This Court should not permit it.

3. The parties came before your Honor at a hearing on July 6, 2017 and discussed resolving Bainbridge's claim, in particular standing to enforce the note. At that time, Ms. Gordon-Oliver was Debtor's counsel. On August 3, 2017, undersigned counsel emailed Debtor's counsel the case citations discussing the controlling law on standing to enforce original notes endorsed in blank, which is what we have here. A true and correct copy of that email chain is attached hereto as Exhibit A. To date, even though a claim objection was ultimately filed (almost six months later), the Debtor has never done anything with the cases provided. The Debtor did not even address that controlling law in the claim objection.

4. The Debtor does not deny borrowing the money and cannot complain about the interest rate. For a note in default, the rate during this case has been astonishingly low. The debt in this case is based on eight years of default under a $772,000 note. The interest rate was originally 6.5% and as of the commencement of this case was just *3.54%*, not 24% as is most common under other notes.

5. At the September 14th hearing before Judge Craig, the issue of standing to enforce the note was again addressed even though the Debtor was on notice of the controlling law since August 3rd. The day before the September 14th hearing, Debtor's counsel asked undersigned counsel to resend the email with the case citations concerning original notes endorsed in blank. Attached hereto as Exhibit B is an email responding to that request and re-forwarding the August 3rd email. Nonetheless, at the September 14th hearing, the Debtor raised the issue about gaps in the assignments of the note and mortgage without any regard to those cases. Judge Craig specifically informed the Debtor that what mattered under New York law was that "the entity holds the note endorsed either to them or in blank", which is the case here. Sept. 14th Hrg. Tr. at 9:5-9. That was mid-September. Still the Debtor did nothing to move the claim resolution forward. Within hours of the September 14th hearing, undersigned counsel emailed Debtor's counsel asking for information on alleged payments and advising that the Debtor was free to contact Mark Kranz, who held the note, and visit to inspect it. Attached hereto as Exhibit C is a true and correct copy of that email (without attachments). It is undisputed that the Debtor ***never*** sent information on alleged payments and ***never*** contacted Mark Kranz to arrange to inspect the note. Instead, the Debtor allowed another 6 weeks to go by with no progress on claim resolution.

6. On October 26th, we were back before your Honor. By that time, Mr. Dahiya had entered the case. At that hearing, again the issue of standing was raised yet again and again there was no mention or acknowledgment of the controlling law. Further, undersigned counsel informed your Honor that Bainbridge had been substituted in (a year and a half earlier) as plaintiff in the state court action after Bainbridge became the noteholder. The state court issued an order naming Bainbridge as plaintiff and relying on statements of the transferor and transferee Bainbridge and overruling objections thereto, including those of the Debtor. A true and correct

copy of the order naming Bainbridge as plaintiff is attached hereto as Exhibit D.  This order should have ended the inquiry into who has standing to enforce the note.  It should have been a settled matter at this point but instead the Debtor insists on re-litigating it.  More than a year later, another order was entered in the state court foreclosure matter granting a motion to appoint a receiver.  As this Court will observe, 231 Bainbridge has continued to the state court's satisfaction as the named plaintiff in that order in that case.  A true and correct copy of the receiver order is attached hereto as Exhibit E.

7. The arguments that Bainbridge somehow lacked or lacks standing is belied by the events in the state court proceedings.  The Debtor knows that the state court would rule swiftly against her if she returned to the foreclosure proceeding to raise this argument.  When your Honor, on October 26th, proposed the idea of lifting the stay and sending the parties back to state court to resolve these issues that were extensively briefed in state court—something that would be a good idea at this point—Mr. Dahiya's reaction was a panicked "No, no.  We don't want to lift the stay . . . because . . . you promised us you're going to protect us."  Oct. 26th Hrg. Tr. 11:18-23.  It is clear to Bainbridge that the state court would make short shrift of this issue but with a new audience, Mr. Dayiha has the opportunity to make and remake new, novel and equitable arguments in an effort to drag this out.

8. The issue came up again at the November 30th hearing as well.  At that point, the Debtor had still not filed a claim objection or dealt with the controlling law.  Mr. Dahiya even stated that the "real owner of the note" was supposed to appear.  Admittedly undersigned counsel forgot he had committed to bringing Mr. Kranz (and the note) to court that day.  Mr. Kranz safeguards but does not own the note.  However, undersigned counsel advised the Court that two

- 4 -

months earlier the Debtor was supposed to contact Mark Kranz to inspect the note at his office but failed to do so. *See* email of September 14th, Exhibit C hereto.

9. Since it was clear that the Debtor was intent on dragging out the claim-related issues, Bainbridge brought the matter before the Court by filing its own Motion to Allow. Instead of filing an objection that Motion, the Debtor filed, just three days before the hearing, an "objection" that said that the Motion was not permitted or even necessary because the claim was not in dispute. Then, the day before the hearing on the Motion to Allow, the Debtor filed the Claim Objection and again raised standing but did not cite or deal with any of the controlling law. At the hearing on January 18th, the Court was not inclined to move forward with the Motion to Allow (although it was properly noticed for that day) because of Mr. Dahiya's last minute Claim Objection which essentially became an objection to the Motion to Allow. Both matters were adjourned to February 21st. At the January 18th hearing, Mr. Dahiya and his client inspected the note. In short, the Debtor has managed to drag out resolution of the standing issue from July 6, 2017 through present or for more than 7 months.

*Conversion Motion and Sale of the Property*

10. The Debtor spent extensive time on the record at the September 14th hearing talking about a sale process. It turns out it was nothing but talk. Counsel advised the Court (Judge Craig) that the Debtor was looking into brokers, that a sale was preferable to a refinance because of an inability to obtain credit, and how Doug Pick would be coming in to deal with the sale and title issues. All of those communications on the record to Judge Craig went nowhere. As of today, we still have not seen a broker retention, a sale motion, a bidding procedures motion, a sale contract, a plan or a disclosure statement.

11. The same exact discussion was had on the record before your Honor at the October 26th hearing. Just prior to that hearing, for five reasons under section 1112(b), Bainbridge moved for conversion to chapter 7. This Court noted that the proper resolution for that motion was a stipulation providing for real deadlines and a sale. The Court also noted that if the Debtor wanted to avoid making adequate protection payments (which have never been made in this case), the Debtor needed to move quickly. The Debtor again talked about the sale process and bidding procedures, etc. etc. The Debtor did not move at all. Nothing was filed. The Court then adjourned everything to November 30th. By that hearing still there was no sale motion, no bidding procedures motion, no sale contract, no plan and no disclosure statement. Mr. Dahiya said he was 'preparing the contract' and committed to filing a motion bidding procedures in two weeks or by mid-December. It is now nearly five months since a sale process was raised before Judge Craig and there is still no contract, no sale or bidding procedures motion, no plan and no disclosure statement. The Debtor has never been required to make adequate protection payments during this case and, in the meantime, she continues to hoard Bainbridge's cash collateral while stalling progress in this case.

## RESERVATION OF RIGHTS

12. Bainbridge continues to expressly reserve all of its rights, claims and defenses against the Debtor under the Note and mortgage and submits that such Note and mortgage remain in full force and effect during the bankruptcy case until this Court decides otherwise. Notwithstanding anything herein, Bainbridge further reserves the right to seek any other relief in this case it deems necessary and to assert further objections to this and any subsequent plans or relief sought by the Debtor. Bainbridge expressly reserves its righty to seek and intends to seek all of its postpetition interest and legal fees as allowed by the Court and permitted by the Note

and mortgage.  Finally, Bainbridge reserves its right to respond in writing to any clarifications of or additions to any of the Debtor's claims against Bainbridge.

13. For all of the foregoing reasons, the Court should deny the Claim Objection and grant the Motion to Allow in the prepetition amount of $1,176,517.94.

Dated: February 16, 2018  
       New York, New York

RAVERT PLLC

By: /s/ Gary O. Ravert  
    Gary O. Ravert  
    116 West 23rd Street, Fifth Floor  
    New York, New York 10011  
    Tel: (646) 966-4770  
    Fax: (917) 677-5419

*Attorneys for 231 Bainbridge LLC*